UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KEVIN MONAHAN, et al.,

Plaintiffs,

-against-

THE CITY OF NEW YORK,

Defendant.

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT.

*JAMES E. JOHNSON*
*Corporation Counsel of the City of New York*
*Attorney for Defendant*
*100 Church Street, 4th Floor*
*New York, NY 10007*

*Of Counsel: Peter W. Brocker*
*Tel: (212) 356-2332*

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................. iii

PRELIMINARY STATEMENT ............................................................................. 1

STATEMENT OF FACTS .................................................................................... 1

STANDARD OF REVIEW .................................................................................... 1

ARGUMENT

    POINT I

        PLAINTIFFS' ARRESTS WERE JUSTIFIED
        BECAUSE PROBABLE CAUSE EXISTED ........................................... 2

        A.  Background Law ................................................................. 3

            1.  Probable cause to arrest ................................................2

            2.  New York State Disorderly Conduct, N.Y.
               Pen. L. 240.20(5) ........................................................3

            3.  New York State Disorderly Conduct, N.Y.
               Pen. L. 240.20(6) ........................................................5

            4.  Vehicle & Traffic Law, Title VII Section
               1102 ...........................................................................6

        B.  Probable Cause Existed to Arrest Each Plaintiff ................. 7

            1.  Plaintiffs Kevin Monahan & Emer
               McKenna ....................................................................7

            2.  Plaintiff Pablo Varona-Borges ......................................8

            3.  Plaintiff Robert LaMorte ..............................................9

    POINT II

        THE CITY OF NEW YORK'S TRAINING
        REGARDING DISORDELRY CONDUCT IS
        CONSTITUTIONALLY ADEQUATE ................................................... 10

        A.  The City of New York was not on notice of any
            inadequacy in its disorderly conduct training .................. 11

1. Plaintiff does not, and cannot, plausibly argue the City was on notice of a deficient training regimen due to a history of constitutional violations ..............................................................11

2. In proper context, the application of deliberate indifference to unpermitted sidewalk protests is not the type of situation that presents difficult decisions of the type training will make easier ..............................................14

B. The NYPD's training is adequate and the NYPD provides additional resources to executive officers for large demonstrations........................................ 15

C. Plaintiffs cannot demonstrate a causal connection between their alleged training deficiency and their alleged constitutional violation ...................................................................... 18

1. The City's provision of attorneys for real-time consultation severs causation. .............................................19

2. Plaintiff Antonio Serna's alleged constitutional violation bears no connection to his *Monell* claim....................................................20

D. Because the law was not clearly established, the City cannot be found liable for a failure to train ................................................................................... 22

POINT IV

PLAINTIFFS LACK STANDING TO PURSUE THEIR EQUITABLE RELIEF CLAIMS................................................. 24

CONCLUSION.................................................................................................... 26

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Pages**

Amnesty Am. v. Town of W. Hartford,
    361 F.3d 113 (2d Cir. 2004)..................................................................................18, 19, 20, 21

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242 (1986)...............................................................................................................2

Bennett v. Dutchess Cty.,
    832 Fed. App'x 58 (2d Cir. 2020)..........................................................................................2

Bowen v. Cty. of Westchester,
    706 F. Supp. 2d 475 (S.D.N.Y. 2010)..................................................................................19

Caravalho v. City of New York,
    732 Fed. App'x 18 (2d Cir. 2018)......................................................................................5, 6

Celotex Corp. v. Catrett,
    477 U.S. 317 (1986)...............................................................................................................1

Cerbelli v. City of New York,
    No. 99 CV 6846, 2008 U.S. Dist. LEXIS 109341 (E.D.N.Y. Sep. 8, 2008) ....................15, 18

City of Canton v. Harris,
    489 U.S. 378 (1989)......................................................................................11, 14, 15, 19, 20

Collins v. City of New York,
    923 F. Supp. 2d 462 (E.D.N.Y. 2013) .............................................................................12, 13

Connick v. Thompson,
    563 U.S. 51 (2011)........................................................................................11, 14, 17, 20

Davis v. City of New York,
    959 F. Supp. 2d 427 (S.D.N.Y. 2013)..................................................................................13

Devenpeck v. Alford,
    543 U.S. 146 (2004)...............................................................................................................2

Dinler v. City of New York,
    2012 U.S. Dist. LEXIS 141851 (S.D.N.Y. Sep. 30, 2012)...................................................3, 6

Doninger v. Niehoff,
    642 F.3d 334 (2d Cir. 2011)................................................................................................22

**Cases**                                                               **Pages**

Evans v. City of New York,
No. 12-CV-5341 (MKB) (VMS), 2015 U.S. Dist. LEXIS 38546
(E.D.N.Y. Feb. 24, 2015)...........................................................................................7

Ganek v. Leibowitz,
874 F.3d 73 (2d Cir. 2017).......................................................................................3

Garcia v. Jane & John Does 1-40,
764 F.3d 170 (2d Cir. 2014)......................................................................................3

Gonzalez v. City of New York,
2016 U.S. Dist. LEXIS 134474 (S.D.N.Y. Sep. 29, 2016).......................................5

Jaegly v. Couch,
439 F.3d 149 (2d Cir. 2006)......................................................................................2

Kass v. City of New York,
864 F.3d 200 (2d Cir. 2017)......................................................................................5

Kogut v. Cty. of Nassau,
No. 06-CV-6695(JS)(WDW), 2012 U.S. Dist. LEXIS 121458
(E.D.N.Y. Aug. 27, 2012).........................................................................................18

Landers v. City of New York,
No. 16-CV-5176 (PKC) (CLP), 2019 U.S. Dist. LEXIS 49352
(E.D.N.Y. Mar. 22, 2019) .........................................................................................5

Lujan v. Defs. of Wildlife,
504 U.S. 555, 112 S. Ct. 2130 (1992).......................................................................24

Lynch v. City of New York,
No. 16 Civ. 07355 (LAP), 2018 U.S. Dist. LEXIS 52301,
2018 WL 1750078 (S.D.N.Y. Mar. 27, 2018) ...........................................................6

Marcavage v. City of New York,
689 F.3d 98 (2d Cir. 2012).........................................................................................25

Marom v. City of New York.,
No. 15 Civ. 2017 (PKC), 2016 U.S. Dist. LEXIS 28466
(S.D.N.Y. Mar. 7, 2016) ....................................................................................12, 13

Megahey v. Cty. of Westchester (In re D.J.),
No. 14 Civ. 7635 (NSR), 2021 U.S. Dist. LEXIS 62958
(S.D.N.Y. Mar. 31, 2021) .........................................................................................22

**Cases**                                                            **Pages**

Morgan v. Cty. of Nassau,
    720 F. Supp. 2d 229 (E.D.N.Y. 2010) ...............................................................24, 25

Newton v. City of New York,
    2010 U.S. Dist. LEXIS 6935 (S.D.N.Y. Jan. 27, 2010).....................................11, 22

Packard v. City of New York,
    No. 1:15 Civ. 07130 (AT) (SDA), 2019 U.S. Dist. LEXIS 189470
    (S.D.N.Y. Oct. 30, 2019) ....................................................................................4, 7

People v. Berardi,
    180 Misc.2d 922 (N.Y. City Crim. Ct. 1999) .............................................................4

People v. Carcel,
    3 N.Y.2d 327 (1957) .................................................................................................5

People v. Jones,
    9 N.Y.3d 259 (2007) ...............................................................................................16

People v. Maher,
    137 Misc. 2d 162 (Crim. Ct. 1987) ...........................................................................4

People v Nixon,
    248 N.Y. 182 (1928) .................................................................................................4

People v. Santiago,
    9 Misc.3d 197 (N.Y. Crim. Ct. 2005) .......................................................................4

People v. Tardif (Mary),
    58 Misc. 3d 31 (N.Y. App. Term 2017).....................................................................4

Pesola v. City of New York,
    No. 15 Civ. 1917, 2017 U.S. Dist. LEXIS 140967 (S.D.N.Y. Aug. 31, 2017) .......13

Quaratino v. Tiffany & Co.,
    71 F.3d 58 (2d Cir. 1995)..........................................................................................1

Quinn v. City of New York,
    No. 99 Civ. 7068, 2003 U.S. Dist. LEXIS 3521, 2003 WL 1090205
    (E.D.N.Y. Mar. 12, 2003) .......................................................................................12

Rasmussen v. City of New York,
    766 F. Supp. 2d 399 (E.D.N.Y. 2011) ....................................................................12

Rivera v. City of New York,
    40 A.D.3d 334, 836 N.Y.S.2d 108 (1st Dep't 2007) .................................................6

**Cases**                                                                                           **Pages**

Roper v. City of New York,
   15 Civ. 10080 (NRB), 2017 U.S. Dist. LEXIS 87561 (S.D.N.Y. Aug. 20,
   2018) ................................................................................................................................21

Shain v. Ellison,
   356 F.3d 211 (2d Cir. 2004).............................................................................................24

Shamir v. City of New York,
   804 F.3d 553 (2d Cir. 2015)..............................................................................................6

Simms v. City of New York,
   480 Fed. App'x. 627 (2d Cir. 2012)................................................................................12

Singer v. Fulton County Sheriff,
   63 F.3d 110 (2d Cir. 1995)................................................................................................3

Terebesi v. Torreso,
   764 F.3d 217 (2d Cir. 2014).............................................................................................22

Twin Laboratories, Inc. v. Weider Health & Fitness,
   900 F.2d 566 (2d Cir. 1990)..............................................................................................1

Waller v. City of Middletown,
   89 F. Supp. 3d 279 (D. Conn. 2015)...............................................................................20

Weyant v. Okst,
   101 F.3d 845 (2d Cir. 1996)..............................................................................................2

Wiles v. City of New York,
   724 F. App'x 52 (2d Cir. 2018) ......................................................................................23

Wiles v. City of New York, et al.,
   16 Civ. 2898 (TPG) 2016 U.S. Dist. LEXIS 148024 (S.D.N.Y. Oct. 25, 2016) ....................23

Ybarra v. Illinois,
   444 U.S. 85 (1979)...........................................................................................................3

Young v. County of Fulton,
   160 F.3d 899 (2d Cir. 1998)..............................................................................10, 11, 22

**Statutes**

42 U.S.C. § 1983..............................................................................................12, 13, 14

Fed. R. Civ. P. 56(c) .............................................................................................................1

| **Cases** | **Pages** |
|---|---|
| Fed. R. of Evid. 702 .......................................................................................................2 | |
| Local Civil Rule 56.1 .......................................................................... *passim* | |
| N.Y. Pen. L. 240.20(5).......................................................................... *passim* | |
| N.Y. Pen. L. 240.20(6).......................................................................... *passim* | |
| N.Y. Pen. L. § 121.13(a) ..........................................................................13 | |
| N.Y.S. V.T.L. § 1102 .......................................................................... *passim* | |
| N.Y.S. V.T.L. § 1156(a). ..........................................................................31 | |

## PRELIMINARY STATEMENT

Plaintiffs are individuals who were participating in the unpermitted Occupy Wall Street ("OWS") one-year anniversary protests on September 17, 2012, and were arrested and charged with disorderly conduct. N.Y. Pen. L. 240.20(5)-(6). Plaintiffs now allege that they were falsely arrested and state a single claim against the City of New York for failure to train. However, the video evidence demonstrates that the officers had probable cause to arrest each plaintiff. Because probable cause existed for each plaintiff's arrest, as well as because the NYPD was not deliberately indifferent to the rights of protesters and provided sufficient resources to ensure that arrests would only be made upon a showing of probable cause, plaintiffs' *Monell* claims fail.

## STATEMENT OF FACTS

For a complete statement of undisputed facts, the Court is respectfully referred to Defendants' Local Civil Rule 56.1 Statement of Undisputed Facts ("D's 56.1 Statement"), dated June 2, 2021, which is being submitted concurrently herewith.

## STANDARD OF REVIEW

Summary judgment is appropriate if the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also, Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The Court must resolve all ambiguities and draw all reasonable inferences in the light most favorable to the party opposing the motion. Quaratino v. Tiffany & Co., 71 F.3d 58, 64 (2d Cir. 1995); Twin Laboratories, Inc. v. Weider Health & Fitness, 900 F.2d 566, 568 (2d Cir. 1990). Factual disputes are only sufficient to defeat summary judgment if the facts in dispute are relevant to a material issue; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S., at 248. Finally, only admissible evidence is sufficient to defeat a motion for summary judgment.

See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Inadmissible evidence, *e.g.* purported expert testimony that fails to satisfy the standards set forth in Rule 702 of the Federal Rules of Evidence, may not be used to support or defeat a motion for summary judgment.

## ARGUMENT

## POINT I

### PLAINTIFFS' ARRESTS WERE JUSTIFIED BECAUSE PROBABLE CAUSE EXISTED

*Monell* liability is a derivative liability, and thus cannot stand in the absence of an underlying constitutional violation. See Bennett v. Dutchess Cty., 832 Fed. App'x 58, 61 (2d Cir. 2020). In the instant case, the only constitutional violation alleged by plaintiffs is false arrest. Therefore, if probable cause existed to arrest a plaintiff for *any* charge, that plaintiff's claim for municipal liability fails as well.

**A.      Background Law**

1.      Probable cause to arrest

"[T]he existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest…" Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996) (internal quotation omitted). Further, "a claim for false arrest turns only on whether probable cause existed to arrest a defendant, and it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest." Jaegly v. Couch, 439 F.3d 149, 154 (2d Cir. 2006) (citing Devenpeck v. Alford, 543 U.S. 146, 153-54 (2004)). Probable cause exists "when the arresting officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." Singer v. Fulton County Sheriff, 63 F.3d 110, 118 (2d Cir. 1995).

In order to arrest an individual, the arrest "must be supported by probable cause particularized with respect to that person." Ybarra v. Illinois, 444 U.S. 85, 91 (1979). However, "[a]n individual's participation in a lawbreaking group may, in appropriate circumstances, be strong circumstantial evidence of that individual's own illegal conduct, but, no matter the circumstances, an arresting officer must believe that every individual arrested personally violated the law. Dinler v. City of New York, 2012 U.S. Dist. LEXIS 141851, at *21-*22 (S.D.N.Y. Sep. 30, 2012) "[P]olice efforts to sort lawbreakers from bystanders, and to advise the latter that they should leave, are highly probative of whether it would be reasonable to conclude that every person arrested violated the law. Id., at *22-*23. As a result, the rule of individualized suspicion does not require that officers ignore collective action, it simply requires that the officers have probable cause that the individuals intended to act collectively and that that collective action violate the law.

Finally, "[t]he law has long recognized that probable cause does not demand evidence of every element of a crime—not even to support a person's arrest." Ganek v. Leibowitz, 874 F.3d 73, 83 (2d Cir. 2017) (citation omitted). Rather, "when… a person's conduct satisfies the *actus reus* of a crime, we have moved well beyond mere suspicion." Id. The Second Circuit has held that "the possibility that some protesters might have a *mens rea* defense to the charge of disorderly conduct establishes neither that police lacked probable cause to arrest them nor that plaintiffs have plausibly alleged as much." Garcia v. Jane & John Does 1-40, 764 F.3d 170, 193 (2d Cir. 2014).

### 2. New York State Disorderly Conduct, N.Y. Pen. L. 240.20(5)

Under New York State Law, "[a] person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof… [h]e obstructs vehicular or pedestrian traffic." N.Y. Pen. L. § 240.20(5).

In *People v. Nixon*, the New York Court of Appeals held that "over 100 individuals… quietly parading up and down one block, four abreast [taking] up half the width of the sidewalk, necessitating some pedestrians to enter the roadway" was insufficient to convict the demonstrators for disorderly conduct; the Court "found that merely congregating in a group, causing some inconvenience to others, is not enough to establish guilt… [i]n the absence of evidence that the defendants caused substantial annoyance to others, or persisted in their conduct after protest from others or warning from a police officer." People v. Maher, 137 Misc. 2d 162, 166 (Crim. Ct. 1987) (interpreting People v Nixon, 248 N.Y. 182, 188 (1928)) (internal quotations omitted); see also, People v. Tardif (Mary), 58 Misc. 3d 31, 41 (N.Y. App. Term 2017) (mere inconvenience of pedestrians is not sufficient to support disorderly conduct conviction) (collecting cases). Further, "[t]he Second Circuit requires a showing that the putative offender was 'actually and immediately blocking' the pedestrian or vehicular traffic in question." Packard v. City of New York, No. 1:15 Civ. 07130 (AT) (SDA), 2019 U.S. Dist. LEXIS 189470, at *16 (S.D.N.Y. Oct. 30, 2019) (internal quotation omitted).

In the context of a sidewalk protest, substantial inconvenience or annoyance to others has been found to exist where the defendant set up two tables on a sidewalk that blocked the passage of more than 50 people. People v. Santiago, 9 Misc.3d 197, 202 (N.Y. Crim. Ct. 2005). In People v. Berardi, 180 Misc.2d 922, 923 (N.Y. City Crim. Ct. 1999), the Court found that a defendant that chained herself blocking the doorway of Macy's department store to protest the sale of fur coats, "obstructing pedestrian traffic and causing people to leave and avoid the area," sufficiently pleaded a disorderly conduct charge under Section 240.20(5). Probable cause also has been found to exist where a plaintiff marched through the streets, chanting with a crowd of hundreds of other marchers, grinding traffic to a halt, and after police had given verbal and physical

direction to protesters to stay on the sidewalk. <u>See</u> <u>Gonzalez v. City of New York</u>, 2016 U.S. Dist. LEXIS 134474, at \*27-28 (S.D.N.Y. Sep. 29, 2016).

3.    <u>New York State Disorderly Conduct, N.Y. Pen. L. 240.20(6)</u>

Under New York law, "[a] person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof…[h]e congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse." N.Y. Pen. L. § 240.20(6). "[T]he gravamen of the offense… is the refusal to desist from… conduct after being ordered to by the police." <u>People v. Carcel</u>, 3 N.Y.2d 327, 333 (1957).

The offense of disorderly conduct under N.Y. Penal Law § 240.20(6) consists of the following elements: "the individual (1) congregated with other persons in a public place; (2) was given a lawful order of the police to disperse; (3) refused to comply with that order; and (4) acted with intent to cause or recklessly created a risk of public inconvenience, annoyance or alarm." <u>Kass v. City of New York</u>, 864 F.3d 200, 211 (2d Cir. 2017).

"To satisfy the first element, the New York Court of Appeals has held that '[t]he term congregates with others, as used in the statute, requires at the very least three persons assembling at a given time and place.'" <u>Landers v. City of New York</u>, No. 16-CV-5176 (PKC) (CLP), 2019 U.S. Dist. LEXIS 49352, at \*15 (E.D.N.Y. Mar. 22, 2019) (quoting <u>Carcel</u>, 3 N.Y.2d, at 331). Second, the police order at issue must be lawful, meaning that the police officer's direction must not have been "purely arbitrary" or "not calculated in any way to promote the public order." <u>Caravalho v. City of New York</u>, 732 Fed. App'x 18, 22 (2d Cir. 2018). Further, "in assessing probable cause we look at the facts as the officers knew them." <u>Id.</u>, at 22 (internal quotation omitted).

With regard to the third element,

whether the police had probable cause to arrest the marchers for defying a police order turns on two factors. The first is whether, and to what extent, the police communicated their orders to the entire crowd…. The second is whether the demonstrators were given an opportunity to comply with those orders — that is, whether they indeed refused to do so.

Dinler, 2012 U.S. Dist. LEXIS 141851, at *34-*35 (internal citations omitted). There is no specific amount of time an officer needs to wait following the order; rather, "the question is whether, at the time the arrests were made, police reasonably believed that bystanders had had sufficient notice and opportunity to leave the area and that only lawbreakers remained." Id., at *48.

Probable cause has been found to exist where a plaintiff initially obeyed officer's order to move and then went back to the officer and called him a thug, as plaintiff's "approach to the officer [after he was told to move] is the antithesis of complying with an order to disperse." Shamir v. City of New York, 804 F.3d 553, 557 (2d Cir. 2015). Similarly, the failure of protestors to disperse after lawful order to do so, even when protestors asserted right to remain, supported probable cause for arrest. Rivera v. City of New York, 40 A.D.3d 334, 836 N.Y.S.2d 108, 112 (1st Dep't 2007).

4.      Vehicle & Traffic Law, Title VII Section 1102

Pursuant to New York State Vehicle & Traffic Law, Title VII Section 1102 ("Section 1102"), "[n]o person shall fail or refuse to comply with any lawful order or direction of any police officer or flagperson or other person duly empowered to regulate traffic." NYS VTL § 1102. "Although a violation of this statute is a traffic infraction, it still constitutes probable cause for a custodial arrest for purposes of federal law." E.g., Lynch v. City of New York, No. 16 Civ. 07355 (LAP), 2018 U.S. Dist. LEXIS 52301, 2018 WL 1750078, at *7 (S.D.N.Y. Mar. 27, 2018); Packard v. City of New York, No. 1:15 Civ. 07130 (AT) (SDA), 2019 U.S. Dist. LEXIS 189470, at *18 (S.D.N.Y. Oct. 30, 2019). Section 1102, however, "does not address just

any disobedience of a police order, but only the disobedience of a police order when that disobedience would have an adverse effect on traffic." <u>Evans v. City of New York</u>, No. 12-CV-5341 (MKB) (VMS), 2015 U.S. Dist. LEXIS 38546, at *51 (E.D.N.Y. Feb. 24, 2015).

**B.    Probable Cause Existed to Arrest Each Plaintiff**

1.    <u>Plaintiffs Kevin Monahan & Emer McKenna</u>

Plaintiffs Monahan and McKenna were arrested in the same location standing feet from each other, seconds apart. (Defendant's Statement of Undisputed Fact, dated June 2, 2021 ("D's 56.1 Stmt."), at ¶ 1). On September 17, 2012, Monahan and McKenna were participating in a march without a permit as part of the Occupy Wall Street ("OWS") One-Year Anniversary Protest. (<u>Id.</u>, at ¶ 2). At approximately 4:30 pm on September 17, 2012, Monahan and McKenna were both marching as part of a large crowd of hundreds of protesters up Broadway in the vicinity of 100 Broadway. The crowd filled the sidewalk and blocked the entrance to 100 Broadway's offices and a TD Bank located on the ground floor therein. (<u>Id.</u>, at ¶¶ 3 & 6). As a result, NYPD officers entered the sidewalk and created an ingress/egress path to the TD Bank and 100 Broadway offices and NYPD Captain Duffy gave orders to the crowd informing them that they needed to disperse or turn around and proceed in the opposite direction. (<u>Id.</u>, at ¶¶ 7-8). Indeed, that orders to turn around were given is not disputed. (<u>Id.</u>). Shortly after the orders are given and the police entered the sidewalk, the protesters begin moving back in the direction they came from. (<u>Id.</u>, at ¶ 9).

Once the police officers entered the sidewalk, a female sergeant directed Monahan to walk in the opposite direction. (D's 56.1 Stmt., at ¶ 11). When he refused to comply with that order he was arrested. (Id. at ¶12).[1] McKenna remained where she was when the police entered

---

[1] Monahan was the white, male with long straight black hair, a goatee, and was wearing a bandana, black T-shirt, and a grey and black backpack arrested in the video footage. (D's 56.1 Stmt., at ¶ 4).

the sidewalk, even after seeing others, including Plaintiff Monahan be arrested. (D's 56.1 Stmt., at ¶ 13). Indeed, McKenna remained on the sidewalk as the crowd began to flow back in the direction from which it came in the video footage. (Id., at ¶ 14). McKenna was one of only a few individuals standing on the sidewalk, ignoring the officers' orders. (Id., at ¶¶ 14-15). Therefore, approximately 60 seconds after the officers entered the sidewalk and ordered the protesters to turn around, McKenna was arrested for failing to comply with that order. (Id., at ¶ 16).[2] As such, there was probable to arrest Monahan and McKenna for disorderly conduct, in violation of both N.Y. Pen. L. § 240.20(5) and § 240.20(6).

### 2. Plaintiff Pablo Varona-Borges

On September 17, 2012, Varona-Borges was participating in an unpermitted march as part of the OWS One-Year Anniversary Protest. (D's 56.1 Stmt., at ¶ 29). Specifically, Varona-Borges was part of a marching band, dancing, and waving a large six-foot red-and-white flag. (Id., at ¶¶ 32-34). At approximately 9:15am, Varona-Borges was part of a crowd marching up Broadway in the vicinity of Wall Street. (Id., at ¶ 31). At that location on Broadway there is a subway station. (Id., at ¶ 28).

As Varona-Borges approached the vicinity of the subway station, NYPD officers were giving orders to the crowd to keep moving or face arrest. (Id., at ¶ 35). Notwithstanding these orders, for approximately 10 seconds, plaintiff and his group continued to wave their flags in front of a subway station entrance and a Chase Bank entrance. (Id., at ¶ 36). The crowd, including Varona-Borges waving his flag along with his band and fellow flag-dancing protesters, obstructed the sidewalk. (Id., at ¶ 37). The flag was approximately six feet wide. (Id., at 34). As a result, individuals could not access the subway station entrance and ultimately at least one

---

[2] McKenna fit the following description: white, female, blonde hair, wearing purple sunglasses, and a wavy patterned/ striped dress, with a black single strap backpack. (Id., at ¶ 5).

individual, a man in a short-sleeve navy blue shirt, had no choice but to give up and continue walking south. (Id.). Deputy Inspector William Gardner then arrested Varona-Borges. (Id., at ¶ 38).[3]

Thus, probable cause existed for Varona-Borges's arrest for disorderly as well as for violation of Section 1102 for blocking the access of pedestrians to the subway station.

### 3. Plaintiff Robert LaMorte

On September 17, 2012, LaMorte was participating in an unpermitted march as part of the Occupy Wall Street ("OWS") One-Year Anniversary Protest. (D's 56.1 Stmt., at ¶ 17). At approximately 8:50am, plaintiff LaMorte was at the intersection of Beaver Street and William Street. (Id., at ¶ 19). He was part of a group of hundreds protestors that obstructed the street by blocking traffic at the intersection of two side-streets, William Street and Beaver Street. (Id., at ¶ 20). At least one van could not access the side streets of William and Beaver because of the crowd. (Id.) NYPD officers issued orders for the crowd to move to the sidewalk so that traffic could resume. (Id., at ¶¶ 21 & 24).

The protesters, including plaintiff LaMorte, remained standing on the sidewalks surrounding the intersection and blocked every corner of the sidewalk at the intersection of Beaver and William Street. (Id.). Captain Bryan Nyhus, over the megaphone, ordered the protesters to disperse so that pedestrian traffic could resume in the area. (Id., at ¶ 32). Plaintiff LaMorte did not comply. Instead, LaMorte turned to the crowd, cupped his hands to his mouth, and began shouting into the crowd while pacing in between the officers and the crowd. (D's 56.1 Stmt., at ¶ 23). After observing LaMorte disregard the order to disperse, Captain Brendan

---

[3] Varona-Borges fit the following description: male, white/Hispanic, brown hair, beard and mustache, wearing a loose blue tie, black hooded sweatshirt, and white undershirt. (Id., at ¶ 30).

Timoney placed him under arrest.[4] (Id., at ¶ 25). There can be no dispute that LaMorte was seeking to ignore the NYPD's orders and was acting in concert with the crowd because immediately after being arrested, LaMorte resisted and, with help from other individuals in the crowd, attempted to escape. (D's 56.1 statement at (Id., at ¶¶ 26-27).

Thus, plaintiff Lamorte was properly arrested for disorderly conduct and violation of Section 1102.

## POINT II

### THE CITY OF NEW YORK'S TRAINING REGARDING DISORDELRY CONDUCT IS CONSTITUTIONALLY ADEQUATE

Plaintiffs' *Monell* claims are founded upon a theory that the NYPD failed to train executive level officers , on the proper application of the disorderly conduct statute. Specifically, plaintiffs allege that the NYPD failed to train adequately on the difference between merely inconveniencing pedestrians and substantially impeding pedestrian traffic. Because they cannot establish any element of their *Monell* claim, plaintiffs' claims fail.

In the Second Circuit,

> to support a claim that a municipality's failure to train amounted to deliberate indifference, a plaintiff must show: (1) that a policymaker of the municipality knows to a moral certainty that its employees will confront a given situation; (2) that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation; and (3) that the wrong choice by the employee will frequently cause the deprivation of a citizen's constitutional rights.

Young v. County of Fulton, 160 F.3d 899, 903-04 (2d Cir. 1998) (internal quotations omitted).

However, a "municipality's culpability for a deprivation of rights is at its most tenuous where a

---

[4] LaMorte fit the following description: white, male, wearing a black bandana on his head, a black t-shirt, and a tan backpack. (D's 56.1 Stmt., at ¶ 18).

claim turns on a failure to train." <u>Connick v. Thompson</u>, 563 U.S. 51, 61 (2011). For municipal liability to attach on a failure to train theory, "a municipality's failure to train its employees in a relevant respect must amount to deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." <u>Id.</u>; <u>City of Canton v. Harris</u>, 489 U.S. 378, 388 (1989). Deliberate indifference "is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." <u>Connick</u>, 563 U.S., at 61.

Further, "a claim for failure to train cannot be sustained unless the employees violated a **clearly established** federal constitutional right." <u>Young v. Cty. of Fulton</u>, 160 F.3d 899, 904 (2d Cir. 1998) (emphasis added); <u>see also</u>, <u>Newton v. City of New York</u>, 2010 U.S. Dist. LEXIS 6935, at *5 (S.D.N.Y. Jan. 27, 2010).

**A.      The City of New York was not on notice of any inadequacy in its disorderly conduct training**

There was no history, as of September 17, 2012, of NYPD officers misapplying the disorderly conduct statute. Further, the determination of when a protest has crossed the line from inconvenience to substantial impediment is not the type of situation that patently obviously will present difficult decisions of the type training will make easier.

1.      Plaintiff does not, and cannot, plausibly argue the City was on notice of a deficient training regimen due to a history of constitutional violations

As an initial matter, plaintiffs do not contend that the City was on notice of deficiencies in its training program due to a history of past incidents of misconduct and there is no evidence in the record that there had been such a history.

First, references to lawsuits that stemmed from the RNC miss the point because there was no mass arrest in this matter. As a result, the questions presented in this matter – whether any of the plaintiffs were arrested after NYPD officers misapplied probable cause under the disorderly

conduct statute,[5] and, if any of those officers did make such a mistake, whether that mistake was the result of a failure of the NYPD to provide constitutionally sufficient training – are entirely distinct from those matters.

Plaintiffs' reliance on civil settlements is also misplaced. The fact that the City settled lawsuits does not permit the conclusion that there was a constitutional violation. See, e.g., Marom v. City of New York, No. 15 Civ. 2017 (PKC), 2016 U.S. Dist. LEXIS 28466, at *77 (S.D.N.Y. Mar. 7, 2016) ("the allegations concerning previous section 1983 lawsuits fail to explain which—if any—lawsuits led to findings of liability against the NYPD for constitutional violations."); Simms v. City of New York, 480 Fed. App'x. 627, 630 (2d Cir. 2012); (citing to another civil lawsuit does not state a claim for municipal liability because the fact of the lawsuit shows only that the allegation was made, "not that those violations actually occurred"); Collins v. City of New York, 923 F. Supp. 2d 462, 479 (E.D.N.Y. 2013); Rasmussen v. City of New York, 766 F. Supp. 2d 399, 409–10 (E.D.N.Y. 2011).

Similarly, plaintiff's citation to a few letters from politicians and that the New York County District Attorney's Office ("DANY") declined to prosecute cases is similarly unhelpful for their *Monell* claim. Politicians, including the District Attorney, have political considerations in addition to their legal conclusions motivating their actions. DANY may choose to decline prosecution, not because the arrest was unconstitutional, but because of non-legal rationales, *e.g.,* allocation of limited prosecutorial resources to more serious crimes and violations, or political determinations by the elected District Attorney. E.g., Quinn v. City of New York, No. 99 Civ. 7068, 2003 U.S. Dist. LEXIS 3521, at *4 (E.D.N.Y. Mar. 12, 2003) (Weinstein, J.) ("A prosecutor's declination provides no indication that plaintiff's arrest was without probable cause."); see also, Davis v. City of New York, 959 F. Supp. 2d 427, 440-441 (S.D.N.Y. 2013).

---

[5] As set forth *supra* in Point I, and *infra* in Point II(C)(ii.), probable cause existed for the arrest of each plaintiff.

Finally, there is simply no reason to infer from the content of two letters from City Councilmembers that the criticism of the NYPD's conduct at OWS protests was based on a constitutional analysis rather than a public policy analysis. E.g., Collins, 923 F. Supp. 2d, at 479 (holding that two incidents from separate units were insufficient to state a failure to train claim). That the NYPD did not behave in a manner that politicians may have approved of is not indicia of unconstitutionality. Indeed, police action is often subject to political scrutiny, and it is quite common for state and local lawmakers to seek to impose more restrictive rules than the constitutional floor. N.Y. Pen. L. § 121.13(a) (making it a crime to use a chokehold as a police officer); compare Pesola v. City of New York, No. 15 Civ. 1917, 2017 U.S. Dist. LEXIS 140967, at *8-*9 (S.D.N.Y. Aug. 31, 2017) (officer was entitled to qualified immunity when alleged chokehold was used to subdue suspect resisting arrest).

This case is highly analogous to *Marom*, in which Your Honor dismissed plaintiff's failure to train *Monell* claim because "plaintiffs fail[ed] to plausibly allege that there is a history of the NYPD mishandling mass protesting situations on a scale that could be reasonably construed as setting out a pattern or practice of constitutional abuse." Marom, No. 15 Civ. 2017 (PKC), 2016 U.S. Dist. LEXIS 28466, at *76 (S.D.N.Y. Mar. 7, 2016). This Court went on to state, "plaintiffs only factual support for the assertion that there is a pattern of the NYPD causing similar constitutional deprivations are the allegations about the 2004 RNC protests and the mention of various other section 1983 lawsuits brought against the City." Id. The same logic supports dismissal here on a motion for summary judgment.

2. In proper context, the application of deliberate indifference to unpermitted sidewalk protests is not the type of situation that presents difficult decisions of the type training will make easier

Plaintiffs contend that no reasonable police executive, without additional specialized training, can determine the proper application of disorderly conduct to an unpermitted sidewalk

protest. This argument blatantly ignores the role of experience, academy training, and the availability of real-time legal resources and as a result misses the mark.

As an initial matter, plaintiffs argument here improperly seeks to expand the "narrow range of circumstances," in which "a pattern of similar violations [is] not be necessary to show deliberate indifference," Connick, 563 U.S. at 63 (internal quotation marks omitted), because "the unconstitutional consequences of failing to train [are] so **patently obvious** that a city could be liable under [Section] 1983 without proof of a pre-existing pattern of violations." Id. at 64 (emphasis added); City of Canton v. Harris, 489 U.S. 378, 390 n.10, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989) (failure to train on deadly force after equipping officers with firearms may be the exceptional case that amounts to deliberate indifference without a pattern of constitutional violations).

Further, plaintiffs' proposed constitutional standard – that the NYPD must offer refresher training on any statute that is going to be applied in a difficult setting – is completely untenable. There are at least hundreds of criminal offenses codified in the New York State Penal Law and thousands of other crimes and violations codified in other statutory compilations, *e.g.* the New York State Vehicle and Traffic Law. (D's 56.1 Stmt., at ¶ 39). The idea that every officer must receive refresher training on *every* statute regularly would amount to a requirement that all police officers remain in training in perpetuity. Policing would fall by the wayside.

Finally, it is not "patently obvious" that failing to provide refresher training on the application of disorderly conduct to officers will result in unconstitutional consequences any more than the failure to provide refresher training on any of the hundreds or thousands of other statutes officers must administer would result in unconstitutional outcomes. Because it was not "patently obvious" that executive officers without disorderly conduct refresher training would

approve the arrests of individuals without probable cause, plaintiffs' claims do not fit into this narrow exception of cases in which a history of misconduct is not required. Therefore, plaintiffs' claims fail.

**B.    The NYPD's training is adequate and the NYPD provides additional resources to executive officers for large demonstrations**

A claim for "failure to train" is really just a claim of deliberate indifference manifested via inadequate training. E.g., City of Canton, 489 U.S., at 388. As a result, the relevant inquiry is not just whether the "training" was adequate, but whether the totality of the circumstances displayed a deliberate indifference to the rights of individuals with whom the municipal employees would come into contact. Where a policy-maker is aware of a situation warranting training, as it will present the employee with a difficult choice or has been handled incorrectly in the past, the policy-maker may have a range of curative options. Providing training is certainly one option. However, the policymaker may choose to train, or hire, a small group of specialists and have them in leadership roles in such instances. See, e.g., Cerbelli v. City of New York, No. 99 CV 6846, 2008 U.S. Dist. LEXIS 109341, at *43 (E.D.N.Y. Sep. 8, 2008) (NYPD's reliance on the Emergency Services Unit ("ESU") to handle emotionally disturbed persons did not amount to deliberate indifference, as all other officers received academy training and had patrol guide guidance on what to do while waiting for ESU to arrive).

Plaintiffs contend that the NYPD was deliberately indifferent to the rights of protesters participating in the OWS anniversary protests on September 17, 2012 because the NYPD (1) failed to promulgate a new Legal Bureau bulletin between 1971 and 2017 and (2) did not offer supplemental refresher training to senior NYPD officers regarding, *inter alia*, disorderly conduct's application to protests. Plaintiffs' arguments fail.

With respect to the alleged need for another Legal Bulletin in light of <u>People v. Jones</u>. 9 N.Y.3d 259 (2007), this argument misses the mark. All that the *Jones* Court did was establish that failure to set forth facts sufficient to establish a *prima facie* case for disorderly conduct in an accusatory instrument was a jurisdictional defense and mandated dismissal of the criminal case. <u>Id.</u>, at 263. *Jones* did not modify the standard for disorderly conduct; it merely applied that standard strictly to the face of the accusatory instrument, and found that the facts alleged in the criminal complaint were not sufficient to establish disorderly conduct in that instance. <u>Id.</u> As a result, the NYPD's training regarding disorderly conduct, which was sufficient before *Jones*, remained legally sound after it. Nevertheless, the NYPD sent out a training memorandum regarding *Jones* in 2007 requiring all commands to ensure officers receive training about that decision. (D's 56.1 Stmt., at ¶¶ 44-45).

With respect to plaintiffs' second argument, plaintiffs correctly note that between 2004 and 2012, the NYPD did not offer additional "in-service" refresher training on the parameters of disorderly conduct. (<u>Id.</u>, at ¶¶ 65-66). However, the NYPD instead relied on the solid foundations laid in academy training and supplemented with additional real-time legal resources for executive officers.[6] (Ds' 56.1 Stmt., at ¶¶ 41-42 & 47-48).

Plaintiffs also argue, without evidentiary support, that executive officers of the NYPD do not regularly and frequently apply the disorderly conduct statute to myriad scenarios. There is simply no evidence in the record of how often, outside of the context of OWS, officers in the NYPD make arrests for violations of disorderly conduct. As a result, there is no indication of

---

[6] There is no dispute that the NYPD provided training to its recruits in the police academy regarding disorderly conduct and that that academy training was legally sound and adequate. (Plaintiffs' Local Rule 56.1 Statement ("Ps' 56.1 Stmt."), dated April 19, 2021, at ¶ 44; <u>see also</u>, D's 56.1 Stmt., at ¶¶ 41-42). Further, in 2004, in preparation for the 2004 Republican National Convention being held at Madison Square Garden ("MSG"), the NYPD offered additional training to officers that would be assigned to police anticipated protests in the vicinity of MSG. (Ps' 56.1 Stmt., at ¶ 63). That training included additional training on the First Amendment, as well as training regarding disorderly conduct. (<u>Id.</u>, at ¶ 64).

whether the executive officers within the NYPD would have had their skills and knowledge of disorderly conduct "perish" as plaintiffs allege. This is entirely speculative. Indeed, Chief Purtell's statements directly contradict plaintiffs' assertion that protests were sufficiently infrequent so as to allow knowledge and skills to atrophy. Chief Purtell testified that when he "became the CO of Midtown North, the borough commander at the time was a two-star chief named Alan Hale (phonetic), who, literally, was probably one of the department's experts on First Amendment issues, crowd control, and stuff like that. So I learned a lot of it directly from him." (Id., at ¶ 46). Thus, the only directly applicable evidence in the record indicates that executive officers regularly considered these issues and that there is no reason to suspect atrophy of their knowledge. As a result, there can be no reasonable inference, absent speculation, that executive officers' knowledge of disorderly conduct had atrophied since the academy.

Contrary to plaintiffs' unsupported allegations, the record evidence confirms that the NYPD was not deliberately indifferent on September 17, 2012 as it relates to the rights of protesters vis-à-vis the disorderly conduct statute. The NYPD specifically staffed the OWS anniversary protest with attorneys from the Legal Bureau to assist executive officers in determining whether probable cause existed. (Id., at ¶ 48). The Legal Bureau attorneys were provided specifically for the difficult questions, the type of questions that plaintiffs allege more training was needed to be able to properly assess, and which the attorneys by virtue of their background would always be in a better position to analyze. (D's 56.1 Stmt., at ¶ 76); Connick, 563 U.S., 52 ("Attorneys are trained in the law and equipped with the tools to interpret and apply legal principles, understand constitutional limits, and exercise legal judgment"). Further, the Legal Bureau prepared additional resources to ensure any orders given by the officers were legally sound. (Id., at ¶ 49).

Indeed, following the RNC protests one of the changes made by the NYPD was to ensure that "[they] had a greater amount of attorneys in the field to help, as a resource, to help the incident commanders in the field." (D's 56.1 Stmt., at ¶ 77). And, unlike in *Cerbelli*, there was no delay in accessing this specialized knowledge; the attorneys were present and had been assigned to assist the executive officers with policing the protests. And the NYPD was entitled to rely on the common sense of its executive officers, and trust that they would seek advice of Legal Bureau attorneys rather than guess as to whether probable cause existed when presented with difficult circumstances. Cerbelli v. City of New York, No. 99 CV 6846, 2008 U.S. Dist. LEXIS 109341, at *43 (E.D.N.Y. Sep. 8, 2008); Walker, 974 F.2d at 299-300; Kogut v. Cty. of Nassau, No. 06-CV-6695(JS)(WDW), 2012 U.S. Dist. LEXIS 121458, at *11 n.2 (E.D.N.Y. Aug. 27, 2012). As a result, as in *Cerebelli*, due to the training and the real-time resources provided to its officers by the NYPD, the NYPD cannot be said to have been deliberately indifferent to the rights of protesters. Therefore, plaintiffs' *Monell* claims fail as a matter of law.

**C.      Plaintiffs cannot demonstrate a causal connection between their alleged training deficiency and their alleged constitutional violation**

"In addition to deliberate indifference, a plaintiff ultimately must identify a specific deficiency in the city's training program and establish that that deficiency is closely related to the ultimate injury, such that it actually caused the constitutional deprivation." Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 129-30 (2d Cir. 2004) (internal quotations omitted). Further, "a plaintiff must demonstrate that the municipal employee's 'shortcomings… resulted from… a faulty training program' rather than from negligent implementation of a sound program or other, unrelated circumstances." Bowen v. Cty. of Westchester, 706 F. Supp. 2d 475, 491 (S.D.N.Y. 2010) (citing Amnesty Am., 361 F.3d at 129-130 & quoting City of Canton, 489 U.S.

at 390-91). The elements of a failure to train claim "require the plaintiffs to prove that the deprivation occurred as the result of a municipal policy rather than as a result of isolated misconduct by a single actor, [so as to] ensure that a failure to train theory does not collapse into *respondeat superior* liability." Amnesty Am., 361 F.3d, at 130.

Plaintiffs allege that executive level officers of the NYPD were inadequately trained as to the application of disorderly conduct to unpermitted sidewalk protests; specifically, plaintiffs allege that the lack of refresher training following the police academy is *per se* a deficient training regimen. However, plaintiffs cannot connect this alleged training deficiency with their allegedly false arrests on September 17, 2012.

Plaintiffs appear to take for granted that no officer ever considers the application of disorderly conduct between their time in the police academy and their becoming an executive officer. Further, plaintiffs completely ignore the provision of real-time legal resources to these executive level officers via the provision of attorneys from the NYPD's Legal Bureau to be consulted regarding any pertinent legal question, *e.g.* whether probable cause for disorderly conduct existed for any given individual.

1.      The City's provision of attorneys for real-time consultation severs causation.

The NYPD provided attorneys for real time consultation regarding whether probable cause existed to arrest protesters on September 17, 2012. Further, the NYPD was entitled to rely on its officers judgment, and presume that the executive officers of the NYPD would seek out legal advice should they be uncertain as to whether some conduct has crossed the threshold into disorderly conduct. See Walker, 974 F.2d at 299-300.

Plaintiffs' allegations amount to an argument that the NYPD should have or could have done more; however, "showing merely that additional training would have been helpful in making difficult decisions does not establish municipal liability." Connick, 563 U.S., 68. It is not

simply enough for plaintiffs to highlight potential training deficiencies, plaintiffs must also rule out all other potential causes for their alleged constitutional violations to succeed on a failure to train claim. See, e.g., Waller v. City of Middletown, 89 F. Supp. 3d 279, 290 (D. Conn. 2015) ("Even if Plaintiffs had proffered sufficient evidence establishing a deficiency in the City's training program, they have not ruled out other possible causes of the Officers' allegedly unlawful search that would not support the City's liability.").

If the executive officers did not so reach out to attorneys to request their advice, without a history of such unconstitutional arrests made by executive officers who have not sought legal advice plaintiffs' claims fail, as this is precisely the sort of improper application of a valid training regimen that is not permitted to found a failure to train. See Amnesty Am., 361 F.3d at 129-130; City of Canton, 489 U.S. at 390-91. In the absence of a history of unconstitutional outcomes, the NYPD was entitled to rely on its executive officers judgement in consultation with Legal Bureau attorneys. As a result, the lack of refresher training in the weeks leading up to September 17, 2017 cannot be said to have been more likely to have caused plaintiffs' alleged false arrests than a failure to consult Legal Bureau attorneys. For this reason, plaintiffs' *Monell* claims fail as well.

> 2. Plaintiff Antonio Serna's alleged constitutional violation bears no connection to his *Monell* claim

Plaintiff Serna's arrest cannot support plaintiffs' *Monell* claim because Serna does not allege a misapplication of the Disorderly Conduct statute. Rather, Plaintiff Serna alleges a complete fabrication by the officers, one which no amount of training could correct if true.

On September 17, 2012, Plaintiff Serna was participating in an unpermitted march as part of the Occupy Wall Street ("OWS") One-Year Anniversary Protest. (D's 56.1 Stmt., at ¶ 51). At approximately 9:15am, Serna was marching with hundreds of people headed north on Broadway.

(Id., at ¶ 52). Serna walked down a side street, Morris Street, away from the main march that continued to proceed on Broadway. (Id., at ¶ 53). On Morris Street, Serna photographed officers making two arrests. (Id., at ¶ 54). The officers making those arrests instructed Serna to move back and then told him to cross the street. (Id., at 55) However, no officer specifically told Serna to enter the roadway. (Id., at ¶ 56). At the point when he was ordered to cross the street, Serna was one of only a handful of people observing the arrests being made, and he was walking by himself when he stepped off the curb in an effort to comply with the officers' instructions to cross to the other side of Morris Street. (D's 56.1 Stmt., at ¶¶ 57-58). As soon as he stepped off the curb, plaintiff was arrested. (Id., at ¶ 59).

There was probable cause for Serna's arrest because he was jaywalking. No officer specifically ordered plaintiff into the street and plaintiff could simply have walked back to the crosswalk and crossed at that point. See, e.g., Roper v. City of New York, 15 Civ. 10080 (NRB), 2017 U.S. Dist. LEXIS 87561, at *3-4 (S.D.N.Y. Aug. 20, 2018) (dismissing a false arrest claim brought by protestors on the ground that there was probable cause to arrest for jaywalking).

Even if that were not the case, Serna's arrest for disorderly conduct bears no relation to plaintiff's claim that the City was deliberately indifferent to the misapplication of the disorderly conduct statute, and cannot be used to support a claim of failure to train. Amnesty Am., 361 F.3d, at 130 ("the elements of a failure to train claim "require the plaintiffs to prove that the deprivation occurred as the result of a municipal policy rather than as a result of isolated misconduct by a single actor, ensure that a failure to train theory does not collapse into *respondeat superior* liability."). Accepting Serna's narrative as true, he was crossing a side street alone, at the direction of police officers, away from the main protest column, and not obstructing any pedestrians or traffic. Even accepting, *arguendo*, that the NYPD's training is outdated and

failed to sufficiently train regarding the difference between a mere inconvenience an substantial impairment, no officer could believe that arresting Serna for briefly crossing a side-street away from the protest without obstructing any traffic or pedestrian was a lawful application of N.Y. Pen. L. 240.20(5). In other words, any training deficiency would have played no role in the alleged circumstances of Plaintiff Serna's arrest, which appears to be an allegation of fabrication by Serna's arresting officer.

**D.      Because the law was not clearly established, the City cannot be found liable for a failure to train**

In the Second Circuit, "a claim for failure to train cannot be sustained unless the employees violated a **clearly established** federal constitutional right." <u>Young v. Cty. of Fulton</u>, 160 F.3d 899, 904 (2d Cir. 1998) (emphasis added); <u>see also</u>, <u>Newton</u>, 2010 U.S. Dist. LEXIS 6935, at *5. "To determine whether a right was clearly established, the Court looks to: (1) 'the specificity with which a right is defined'; (2) the existence of Supreme Court or the applicable circuit court case law on the subject; and (3) whether it was 'objectively reasonable' for the defendant to believe the conduct at issue was lawful." <u>Megahey v. Cty. of Westchester (In re D.J.)</u>, No. 14 Civ. 7635 (NSR), 2021 U.S. Dist. LEXIS 62958, at *17 (S.D.N.Y. Mar. 31, 2021). (quoting <u>Terebesi v. Torreso</u>, 764 F.3d 217, 231 (2d Cir. 2014)). Further, "a determination of whether the right at issue was clearly established must be undertaken in light of the specific context of the case, not as a broad general proposition." <u>Doninger v. Niehoff</u>, 642 F.3d 334, 345 (2d Cir. 2011)) (internal quotation omitted). Therefore, for plaintiffs to succeed on their claims in this case, it must have been clearly established as of September 17, 2012 that providing real-time access to attorneys for executive officers rather than providing <u>supplemental</u> training on the application of disorderly conduct amounted to an unconstitutional deliberate indifference to the rights of protesters, *i.e.* a failure to train.

Defendants' research, however, has not revealed a single case from the Supreme Court or from the Second Circuit on this point. As a result, operating in this vacuum of legal guidance, the NYPD made an "objectively reasonable" determination that providing attorneys would better equip its executives to respond to fluid and phantasmagoric protest scenarios. Indeed, there is strong reason to believe that this was not merely *a* choice, but the *best* choice, available to the NYPD. At a minimum, making such a choice has never been clearly established to be unconstitutional.

Moreover, plaintiffs cannot establish that the application of the disorderly conduct statute to plaintiffs in this matter arose from a systemic constitutional violation clearly established under the law. This is true in two regards. First, the arrests themselves do not violate clearly established law. On the contrary, the cases cited throughout this brief, when applied to the facts of plaintiffs' arrests, would entitle the individual officers to summary judgment based on either the existence of probable cause or qualified immunity. E.g., Wiles v. City of New York, et al., 16 Civ. 2898 (TPG) 2016 U.S. Dist. LEXIS 148024 (S.D.N.Y. Oct. 25, 2016) (granting summary judgment on qualified immunity grounds for the arrest of plaintiff at the same location and approximately the same time as plaintiffs McKenna and Monahan); aff'd by Wiles v. City of New York, 724 F. App'x 52, 53 (2d Cir. 2018). Perhaps recognizing this reality, plaintiffs chose to forego any action against individual officers. This serves to highlight the fact that plaintiffs' *Monell* claim fails because the underlying violations do not support a violation of clearly established constitutional principles.

Second, plaintiffs cannot show the any alleged deficiency violates clearly established law. In other words, plaintiffs wholly fail to point to any principle or concept of clearly established law that is being omitted from training and police officials knew should be included.

Plaintiffs' only argument is that the City should have known that its police officers would make the "wrong choice. However, there is no evidence that supports this assertion. Defendant could fill a brief describing all the instances where judges and juries found that police officers made the right choice in arresting individuals for disorderly conduct at protests, including Occupy Wall Street related demonstrations. As a result, defendant is entitled to summary judgment.

## POINT III

### PLAINTIFFS LACK STANDING TO PURSUE
### THEIR EQUITABLE RELIEF CLAIMS

Plaintiffs in this matter seek equitable relief should they prevail at trial. (Ds' 56.1 Stmt., at ¶ 47). However, because they lack standing, this Court should dismiss any and all claims for relief arising from the Court's equitable powers.

"To have standing to obtain injunctive and related declaratory relief from the government, a plaintiff 'must show a likelihood that he will be injured in the future' by the conduct he seeks to enjoin." Morgan v. Cty. of Nassau, 720 F. Supp. 2d 229, 243 (E.D.N.Y. 2010) (quoting Shain v. Ellison, 356 F.3d 211, 215 (2d Cir. 2004). Standing is determined at the time of the filing of the lawsuit. Lujan v. Defs. of Wildlife, 504 U.S. 555, 570 n.5, 112 S. Ct. 2130, 2142 (1992) ("standing is to be determined as of the commencement of suit"). The instant lawsuit was filed on March 27, 2020 (See Brocker Declaration, at Exhibit "N").

LaMorte resides in South Carolina, Varona-Borges resides in Puerto Rico, and McKenna resides in Washington State. (D's 56.1 Stmt., at ¶¶ 61-63). While Monahan is a New York State resident, he has not attended a protest since 2012, and only ever participated in two protests, which were OWS protests in 2011 and in 2012. (Id., at ¶¶ 64-66). Further, of Monahan's four arrests, only this one has been related to protesting. (Id., at ¶ 67-68). Serna is the sole New York City resident and is the only one to continue to protest in the City; however, Serna has been

arrested only once, and there is no indication he is, in any way, likely to come into contact with the NYPD during a protest again. (<u>Id.</u>, at ¶¶ 69-71). Indeed, no plaintiff has ever been arrested for protesting more than once. (<u>Id.</u>, at 72).

These plaintiffs clearly lack standing to seek any form of equitable relief. In an analogous case, <u>Morgan v. Cty. of Nassau</u>, the Court dismissed equitable claims brought by a South Carolina resident that sought to enjoin the use of mounted police in crowd control, despite that person having testified he may travel back to Nassau County to protest again in the future if such demonstrations were organized. 720 F. Supp. 2d 229, 244 (E.D.N.Y. 2010). Indeed, the <u>Morgan</u> Court held that "if there are future [] events in Nassau County, [the plaintiff] may travel to participate in them is precisely the kind of hypothetical harm that is insufficient to confer standing on a plaintiff." <u>Id.</u> Similarly, in <u>Marcavage v. City of New York</u>, the Second Circuit dismissed plaintiffs' equitable claims for lack of standing because no major political party would be holding a convention in New York City in the foreseeable future, and that even if such events were held, there is no reason to suspect the same police practices would be used. <u>See</u>, 689 F.3d 98, 103 (2d Cir. 2012).

Plaintiff's cannot plausibly allege that they were in "imminent risk" of being arrested by the NYPD pursuant to the same allegedly unconstitutional application of disorderly conduct based on one arrest from nearly 10 years before the filing of this matter in March, 2020. As a result, plaintiffs lack standing to seek any equitable relief in this matter.

## CONCLUSION

As a result of the foregoing, defendant requests judgment dismissing the Complaint in its

entirety, together with the costs and disbursements of this action and such other and further relief

as the Court may deem just and proper.

Dated:       June 2, 2021
              New York, NY

                                    **JAMES E. JOHNSON**
                                    Corporation Counsel of the City of
                                     New York
                                    *Attorney for defendant City of New York*
                                    100 Church Street, 4th Floor
                                    New York, NY 10007
                                    T: (212) 356-2332

                   By:    *Peter W. Brocker /s//*
                                  _____
                                    Peter W. Brocker, Esq.
                                    *Assistant Corporation Counsel*

cc: All Attorneys of Record (via ECF)