UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
KEVIN MONAHAN, EMER MCKENNA,
PABLO VARONA BORGES, ANTONIO
SERNA and ROBERT LAMORTE,

                        Plaintiffs,                        20-cv-2610 (PKC)

        -against-

                                                OPINION AND ORDER
CITY OF NEW YORK,

                        Defendant.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

        Plaintiffs move for reconsideration of this Court's Opinion and Order of March 30, 2022 (the "Opinion") to the extent that it granted summary judgment to defendant City of New York ("City") on the issue of municipal liability.  Monahan v. City of New York, No. 20-CV-2610 (PKC), 2022 WL 954463 (S.D.N.Y. Mar. 30, 2022).  Plaintiffs asserted that, at the time of plaintiffs' arrests in 2012, the City was deliberately indifferent to its failure to train police officers on the standards for probable cause for arrest for disorderly conduct, thereby causing the false arrests of plaintiffs.

        The Court summarized the essential considerations for its grant of the motion for summary judgment in the City's favor:

> In deciding the City's motion, the Court assumes arguendo that plaintiffs were falsely arrested in violation of the Fourth Amendment.  Drawing every reasonable inference in favor of plaintiffs as non-movants, the Court concludes that no reasonable trier of fact could find that their arrests were a product of the City's deliberate indifference to officer training.  Plaintiffs have not pointed to evidence that would permit a reasonable trier of fact to conclude that the City was on notice that NYPD members were unconstitutionally making false arrests on disorderly conduct charges, to such an extent that the alleged failure to train officers

> amounted to an official policy, practice or custom.  Plaintiffs also
> have not identified a specific training deficiency that is closely
> connected to their injuries.  Far from being deliberately indifferent
> to member training, some of the evidence cited by plaintiffs reflects
> that senior NYPD leadership was attentive to the importance of
> training on the policing of large-scale protests.

(Opinion at  2.)

The Court has considered the entirety of the plaintiff's motion for reconsideration. The principal grounds asserted by plaintiffs are that (1) the Court improperly applied controlling precedent, (2) the Court improperly applied summary judgment standards, and (3) the Court improperly failed to consider its expert's opinion.  Because the Court finds the plaintiffs' arguments to be unpersuasive, the motion will be denied.  Familiarity with the Opinion and the summary judgment record is assumed.

1.    The Court Correctly Applied Controlling Precedent

A.    Connick

In its motion for reconsideration, plaintiffs assert that "[t]he court committed legal error by imposing a notice standard more stringent than that in Connick v. Thompson."[1]  (Pl. Mem. at 6.)  To the contrary, the Court relied extensively upon Connick and adhered to its commands.  (Opinion at 6, 26-30, 34.)

Connick observed that "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."  563 U.S. at 61.  "To satisfy the statute, a municipality's failure to train its employees in a relevant respect must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'"  Id. (quoting City of Canton v Harris, 489 U.S. 378, 388 (1989)).  A municipality acts with deliberate indifference when it is (1) "on actual or constructive notice" of a particular

---

[1] 563 U.S. 51 (2011).

deficiency in the training of its employees, and (2) the deficiency in training "causes city employees to violate citizens' constitutional rights. . . ." Id.  "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." Id. at 62.  "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." Id. at 62.  The Court respectfully submits that these standards were faithfully applied to the evidence presented on the summary judgment record.

Plaintiffs also assert that the Court should have applied the three-factor test of Walker v. City of New York, 974 F.2d 293 (2d Cir. 1992), decided 19 years before Connick. The Court explained why it was unnecessary to do so.  (Opinion at 28-29.)  The Court relied in part on the Second Circuit's holding in Hernandez v. United States, 939 F.3d 191, 206-10 (2d Cir. 2019), that applied Connick and City of Canton to a failure-to-train claim without discussion of Walker.  This Court's Opinion likewise applied Connick and other controlling precedent.  If the Supreme Court's decision in Connick set a new standard different from Walker, then this Court was required to apply the new standard; if the Connick standard is the same as Walker, then applying Connick without reliance on Walker was at most harmless.

Walker addressed a failure to train claim at the motion to dismiss stage and held that a showing of deliberate indifference requires a showing that (1) "a policymaker knows 'to a moral certainty' that her employees will confront a given situation;" (2) "the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation;" and (3) the "wrong choice by the city employees will frequently cause the deprivation of a citizen's

constitutional rights." <u>Walker</u>, 974 F.2d at 297.[2]  <u>Walker</u>'s second requirement must be read in light of the Supreme Court's decisions in <u>Connick</u> and <u>Board of Commissioners of Bryan County v Brown</u>, 520 U.S. 397 (1997).  <u>Connick</u> quoted <u>Bryan County</u> for the proposition that "'deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his actions." <u>Connick</u>, 563 U.S. at 61; <u>Bryan</u>, 520 U.S. at 410; <u>see also</u> <u>Pettiford v. City of Yonkers</u>, 14 cv 6271 (JCM), 2021 WL 2556172, at *6 (S.D.N.Y. June 21, 2021) ("Implicit in <u>Walker</u>'s second requirement is that a municipal actor must have disregarded a <u>known</u> or <u>obvious</u> consequence of their inaction.") (emphasis in original) (citing <u>Connick</u> and <u>Bryan</u>).

There was no error in applying <u>Connick</u> and other Supreme Court precedent directly to plaintiffs' claim.  The Court did not, contrary to plaintiffs' assertion, apply a standard more stringent than <u>Connick</u>.  Consistent with <u>Connick</u>, this Court applied an actual <u>or constructive</u> standard of notice.  (Opinion 26, 28, 30.)

B.    <u>Jenkins</u>

As noted, the Court's grant of summary judgment also stands on the alternate ground that no reasonable jury could conclude that a specific deficiency in the City training program was closely related to an injury to any plaintiff.  (Opinion at 39.)  In setting forth the standard for assessing the plaintiffs' claim, the Court also relied on Second Circuit authority requiring a plaintiff at the summary judgment stage to make an evidentiary showing of  the relationship between the specific deficiency in training and the injury he or she suffered.  <u>Jenkins v. City of New York</u>, 478 F.3d 76, 94 (2d Cir. 2007) ("In addition, at the summary judgment

---

[2] The Court's grant of summary judgment did not hinge on the City's awareness that its police officers will confront situations where a decision whether to arrest to arrest for disorderly conduct must be made.  Nor did it rest on whether a wrong choice would harm those affected by the decision.

stage, plaintiffs must 'identify a specific deficiency in the city's training program and establish that that deficiency is closely related to the ultimate injury, such that it actually caused the constitutional deprivation.'") (quoting <u>Green v. City of New York</u>, 465 F.3d 65, 81 (2d Cir. 2006), and <u>Amnesty America v. Town of West Hartford</u>, 361 F.3d 113, 129 (2d Cir. 2004)); <u>see also</u> <u>City of Canton</u>, 489 U.S. at 390-91.  There was no error in the Court's application of <u>Jenkins</u>.

2.　　<u>The Court Properly Applied Summary Judgment Standards.</u>

Plaintiffs assert that the Court engaged in improper fact finding and usurped the jury's role.  The Court does not agree.  The Court applied the traditional standard governing summary judgment motions.[3]  On each issue presented, the Court drew every reasonable inference in favor of the non-movant, <u>i.e.</u>, the plaintiffs.  (Opinion at 2, 31, 32, 33, 45.)

Without limiting the Court's discussion of summary judgment standards in the Opinion, the Court notes that the standard on a summary judgment motion mirrors the standard for judgment as a matter of law.  <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986); <u>Piesco v. Koch</u>, 12 F.3d 332, 341 (2d Cir. 1993) ("In the assessment of whether there are fact issues that should be decided only by the jury, the same standard that applies to a pretrial motion for summary judgment . . . also applies to motions for judgment as a matter of law during or after trial pursuant to Rule 50.").  Thus, Courts are required to consider whether on the summary judgment record a reasonable fact-finder could find for the non-movant on the issue on which the summary judgment motion is premised.  <u>See</u> <u>Anderson,</u> 477 U.S. at 254-55.

---

[3] Plaintiffs were the initial summary judgment movants.  (ECF 55.)  On their motion, they correctly reminded the Court that "[t]he Court is required to hold a party's feet to the fire at summary judgment."  (Pl. Reply Mem. at 3; ECF 82.)

On the issue of whether the City was on actual or constructive notice of a deficiency in training relative to the application of standards of probable cause to arrests for disorderly conduct, the Court analyzed multiple categories of evidence, specifically: (1) letters from elected officials (Opinion at 31-32); (2) the viewpoint of community groups and members of the community (id. at 32-33); (3) earlier civil proceedings directed to the policing of protests (id. at 33-34); (4) prosecutorial decisions declining to prosecute or consenting to an adjournment in contemplation of dismissal (id. 34-37); (5) the "after action report" of 2002 following the World Economic Forum protests (id. at 37); and (6) the protests in 2020 following the death of George Floyd (id. at 38).

With regard to whether the plaintiffs identified a training deficiency closely identified with the constitutional injury they suffered, the Court noted the Second Circuit 's caution in Amnesty America that "the factfinder's inferences of inadequate training and causation [must] be based on more than the mere fact that the misconduct occurred in the first place." 361 F.3d at 130. A plaintiff must provide "evidence tending to rule out those causes of the [unconstitutional conduct] that would not support municipal liability, such as the negligent administration of a valid program, or one or more officers' negligent or intentional disregard of their training . . . ." Id. (Opinion at 39.) Further, "contemporaneous or subsequent conduct cannot establish a pattern of violations that would provide "notice to the cit[y] and the opportunity to conform to constitutional dictates . . . ." Connick, 563 U.S. 51, 63 n.7.[4]

In its review of the record, the Court considered (1) the 2009 memorandum of Lieutenant Robert Schwach (Opinion at 40-41); (2) training materials prepared in advance of the 2004 Republican National Convention (id. at 42); (3) the testimony of Anthony J. Raganella and

---

[4] The Opinion at 46 cites to the unpublished opinion of the Circuit in Greene v. City of New York, 742 Fed. App'x 532, 537 (2d Cir. 2018), which, in turn, quotes from footnote 7 in Connick.

Jose Vega who testified as Rule 30(b)(6) witnesses for the City (id. at 42-43); (4) the training specific to the Occupy Wall Street Movement, including the deposition of Edward Winiski (id. at 45); (5) the George Floyd protests of 2020 (id. at 46); and (6) a legal bulletin on the New York Court of Appeals decision in 2007 relating to disorderly conduct arrests for standing on a sidewalk (id. at 46-47).

While plaintiffs disagree with the Court's conclusions, the Court's attention has not been directed to any material matter that the Court overlooked or would alter its conclusion that the evidence could not permit a reasonable jury to find in plaintiffs' favor.

3.    The Expert Reports of Robert E. Brown Are Inadmissible
      and, in Any Event, Would Not Alter the Result.

   A.    The "Expert Report" and "Supplement" Are Inadmissible.

On the motion for summary judgment, plaintiffs submitted two letters from Robert E. Brown, one dated October 23, 2018 and the other dated January 26, 2021, each bearing the caption of Packard v City of New York, 15 cv 7130, a case pending in this district challenging arrests at street demonstrations on similar grounds.  Plaintiffs' attorney's declaration in this action states "[a]ttached hereto as Exhibit 177 is a true and correct copy of the Expert Report and Supplement of Robert E. Brown."  (ECF 56 ¶ 82.)  Plaintiffs have also filed in this action a declaration submitted by Brown in the Packard action.  (Rifkin Dec. Ex. F; ECF 79-6.)

The April 19, 2019 Brown declaration does not address any aspect of police training.   It does not refer to or authenticate the October 23, 2018 letter which plaintiffs refer to as Brown's "Expert Report."  The 2019 declaration does not and could not address the January 26, 2021 so-called "Supplement" to the Expert Report because the declaration precedes it by 21 months.  There is no other affidavit, declaration or deposition of Brown.

"'Courts in this Circuit have uniformly held that unsworn expert reports do not satisfy the admissibility requirements of [Federal Rule of Civil Procedure] 56(e), and cannot be used to defeat a summary judgment motion without additional affidavit support.'"  <u>Scalercio-Isenberg v. Port Auth. of New York & New Jersey</u>, No. 16-CV-8494 (VSB) (SN), 2019 WL 13111939, at *1 (S.D.N.Y. Sept. 6, 2019) (quoting <u>Berk v. St. Vincent's Hosp. & Med. Center</u>, 380 F. Supp. 2d 334, 352 (S.D.N.Y. 2005)); <u>accord</u> <u>Valdes v. Brooks</u>, No. 19-CV-617 (JGK), 2021 WL 4803699, at *4 (S.D.N.Y. Oct. 13, 2021) (an "unsworn expert cannot be used to defeat a motion for summary judgment."), <u>aff'd</u>, 2023 WL 309611 (2d Cir. Jan. 19, 2023).  "Unsworn letters and reports may be admissible only when the opinions expressed in such documents are reaffirmed by deposition testimony."  <u>Zorn v. Mount Sinai Med. Ctr., Inc.</u>, No. 09 CIV. 3228 LTS, 2012 WL 4320575, at *2 (S.D.N.Y. Sept. 20, 2012).

The April 19, 2019 declaration does set forth Brown's qualifications in an adequate manner, but it does not authenticate, validate, verify or otherwise render admissible the facts and opinions in the October 23, 2018 "Expert Report" or the January 26, 2021 "Supplement."

Separately, in the unauthenticated reports, Mr. Brown opines on such matters as whether a plaintiff's actions on the date of her arrest were protected speech and whether there was probable cause for the arrest.  In the context of a civil suit alleging false arrest, the Second Circuit has affirmed the exclusion of expert testimony on probable cause because it falls within the province of the Court to instruct the jury on the subject.  <u>Rizzo v. Edison, Inc.</u>, 172 Fed. App'x 391, 395 (2d Cir. 2006) ("The judge is both uniquely qualified and uniquely tasked to

make the legal determination of what constitutes probable cause; an expert cannot assist in this task, at the summary judgment phase or at trial.").[5]

The facts and opinions in the "Expert Report" and "Supplement" are not admissible and may not be considered on a summary judgment motion.

B.      Taking Full Consideration of the Brown Reports Does Not
        Alter the Conclusion on the Motion.

For the past 17 years, Mr. Brown has been a practicing lawyer "with an emphasis on criminal defense."  (Stecklow Dec. Ex. 177; ECF 56-81 at 19.)  He has represented police officers in administrative proceedings and plaintiffs and defendants in police misconduct cases. (Id.)  In 2000, he retired from the New York City Police Department with the rank of Captain. (Id. at 18.)

Expert testimony on failure to train may be admissible at trial.  But these two reports from Brown, if considered on the summary judgment motion, would not alter any conclusion.   Stripped of inadmissible opinions on the subject of protected speech and probable cause, the letters review much the same evidence that the Court reviewed as part of its summary judgment analysis.

Brown's five-page supplemental report dated January 26, 2021 is devoted almost exclusively to the probable cause determinations as to the five named plaintiffs and would be inadmissible at trial.  It contains fleeting and conclusory references to training.  See, e.g. Ex 177; ECF 56-81 at 2-5 ("Thus Dr. McKenna's arrest reflects the City's failure to provide adequate training to its police officers on the First Amendment rights of protestors and the procedures by which such protestors could be dispersed and or arrested;" identical statement as to plaintiff Monahan; "Proper NYPD training of probable cause standards for sidewalk protest would

---

[5] Rizzo, a summary order, cites in-Circuit and out-of-Circuit authority for the point.

provide that the conduct of Mr. Borges does not provide support for his arrest." "Such failure is indicative that the proper training in sidewalk protest policing was not provided, as such training would include the proper language for dispersal orders and the requirement that individuals be provided time and a path of egress to comply." "Proper training would indicate that specific facts need to be identified to support the probable cause for the arrest of an individual, whether in the street or on the sidewalk.").

Brown's statements in the January 26, 2021 letter report are nothing more than a restatement of the deficiencies in the five arrests and the assertion that in each case the training would have cured the deficiency. The statements are conclusory and take no account of the possibility that the arrests were the product of errors by the arresting officers or their supervisors, as distinguished from a failure on the party of the City to properly train.

Brown's letter report dated October 23, 2018—preceding the institution of this action—fairs no better. In 4-1/2 pages, the letter discusses defects in the arrests of four individuals who are plaintiffs in the Packard case. Such opinions on probable cause would be inadmissible for reasons stated.

As to the balance of the 2018 letter report prepared for the Packard case, it largely relies on materials that the Court's Opinion directly addresses: the materials used in advance of the Republican National Convention in 2004 (Opinion at 42); the 2017 Legal Bulletin (id. at 46-47); the Schwach memo (id. at 40-41); letters from elected officials and community groups (id. at 32-33); the depositions of Rule 30(b)(6) witnesses (id. at 42-43); the settlement of civil cases (id. at 33-34); the dismissals of criminal prosecutions (id. at 34-37).

Giving full consideration to the entirety of the two letter reports by Brown (except his opinions on probable cause and protected speech), it would neither materially alter the summary judgment record considered by the Court nor alter the Court's conclusions.

CONCLUSION

The motion for reconsideration (ECF 100) is DENIED.[6]

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
        February 21, 2023

---

[6] The Court reiterates that in deciding the summary judgment motion, the Court found it unnecessary to reach the City's alternative argument that the presence of executive officers at the scene of the arrests with access to real-time legal advice severs the causal connection between any training lapses and any injury the plaintiffs suffered. (Opinion at 47.)